UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:17-CV-00053-HBB

TIM HAMILTON                                                                                PLAINTIFF

VS.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security                                                            DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Plaintiff Tim Hamilton seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 18) and Defendant (DN 21) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 14). By Order entered July 17, 2017 (DN 15), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

### FINDINGS OF FACT

Plaintiff filed an application for Disability Insurance and Supplemental Security Income benefits on January 31, and February 8, respectively (Tr. 277, 279). Plaintiff alleged that he became disabled on March 1, 2010 (Id.). Plaintiff described his disabling conditions as follows:

1. Diabetes, bipolar, copd, urticaria, hbp, pancreatitis, hyper
2. Diabetes Mellitus type II (uncontrolled)Insulin Dependent
3. Unspecified essential hypertension (primary)
4. Depression
5. Bipolar Affect, depressed
6. Urticaria
7. COPD (chronic obstructive pulmonary disease)
8. BPH (benign prostatic hypertrophy)
9. Headache-Classic Miagraine
10. Fatigue (Chronic)
11. High Cholesterol
12. hpb

(Tr. 306). Administrative Law Judge Amber Downs conducted a hearing on January 14, 2015 (Tr. 32). The ALJ was in Paducah, Kentucky, and Plaintiff appeared via video from Owensboro, Kentucky and represented by Sara Martin, an attorney. Also present and testifying was vocational expert Lowell LaTell. The ALJ conducted a second hearing on July 15, 2015 (Tr. 74). This time, Plaintiff appeared in person in Paducah, Kentucky. Also testifying were vocational expert Stephanie Barnes and psychological expert Tom Wagner.

In a decision dated January 6, 2016, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 7-31). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 1, 2010, the alleged onset date (Tr. 12). At the second step, the ALJ determined that Plaintiff's degenerative disc disease, obesity, diabetes mellitus, coronary artery disease, hypertension, peripheral neuropathy, bipolar disorder, and anxiety are "severe" impairments within the meaning of the regulations (Tr. 12). Also at the second step, the ALJ determined that Plaintiff's COPD and sleep apnea are "non-severe" impairments within the meaning of the regulations (Tr. 13). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 13-15).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform less than a full range of light work (Tr. 15). More specifically, the ALJ assigned the following limitations:

> [H]e needs to alternate sitting and standing every 30 minutes. He can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit, stand, and walk six hours each in an eight-hour workday. He can occasionally stoop, crouch, and climb ladders, ropes, scaffolds, ramps, and stairs. He can tolerate frequent exposure to extreme cold, dust, odors, fumes, pulmonary irritants and unprotected heights. He can have occasional exposure to extreme heat and humidity. He can perform one to three step simple work tasks involving no contact with the public. He can occasionally interact with supervisors and coworkers. He should avoid detailed work on a sustained basis, and avoid all complex work. He should also avoid exposure to dangerous machinery, loud and confusing work environments, and highly distracting work.

(Tr. 15). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of his past relevant work as a forklift operator and production laborer (Tr. 22-23).

The ALJ proceeded to the fifth step where she considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 23). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 23-24). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from March 1, 2010 through the date of the decision (Tr. 24).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 5-6). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step. For the reasons that follow, the ALJ's decision was not supported by substantial evidence, and this case is remanded for additional considerations consistent with this opinion.

Summary of Plaintiff's Challenges

Plaintiff offers six challenges to the ALJ's findings. First, Plaintiff asserts the vocational expert proffered obsolete jobs, and as a result, the ALJ's step five determination is not supported with substantial evidence (DN 18 at PageID # 2009-14). Second, Plaintiff argues the ALJ erred in not affording controlling weight to the opinion of treating cardiologist Dr. Havelda (Id. at PageID # 2014-16). Third, Plaintiff argues the ALJ erred in assigning too little weight to the opinion of consultative examiner Dr. Susan Lear (Id. at PageID # 2016-17). Fourth, Plaintiff argues the ALJ erred in assigning great weight to the opinion of testifying psychologist Dr. Tom Wagner (Id. at PageID # 2017-18). Fifth, Plaintiff contends the ALJ erred by not considering the combined effects of Plaintiff's impairments (DN 2018-19). And finally, Plaintiff argues the ALJ erred in discounting the credibility of Plaintiff's testimony without offering good reasons for doing so (Id. at PageID # 2019).

Discussion

Obsolescence of Vocational Expert's Proffered Occupations

Both parties have briefed the issue of obsolescence as it relates to this case. First, however, the undersigned notes that the Commissioner has expended considerable time explaining why this Court should not consider this issue, either because the ALJ may rely exclusively on the DOT and the vocational expert, or because Plaintiff's counsel did not raise these objections at the administrative hearing or to the Appeals Counsel. This Court addressed identical arguments from the Commissioner in a previous case, Johnson v. Commissioner, No.

4:16-CV-00106-HBB, 2017 WL 2454326, at *4-6 (W.D. Ky. June 6, 2017). At that time, this Court addressed these arguments as follows:

> The Court will begin with Defendant's argument that Plaintiff waived this claim by failing to raise it during the administrative hearing through cross-examination of the vocational expert. First, Defendant's reliance on Sims v. Comm'r of Soc. Sec., 406 F. App'x 977 (6th Cir. 2011) is misplaced. In the section cited by Defendant, the Sixth Circuit addressed Sims' argument that the hypothetical questions to the vocational expert did not reflect Dr. Guerrero's conclusion that she was moderately limited in her ability to maintain attention and concentration. Id. at 982. The Sixth Circuit held that Sims' argument failed "because the ALJ asked the vocational expert if this restriction would impact a claimant's ability to work as a security monitor, and the expert testified that it would not." Id. The Sixth Circuit merely pointed out that the vocational expert's testimony could have been further refined through cross-examination but Sims' counsel failed to take advantage of that opportunity. Id. at 982. The Sixth Circuit did not hold that Sims waived the claim by failing to cross-examine the vocational expert. Id. Thus, the Sims case does not support Defendant's argument that Plaintiff waived her claim by failing to raise it before the ALJ through cross-examination of the vocational expert.
>
> Obviously, Plaintiff's counsel must be familiar with the information at issue in order to refine the vocational expert's testimony through cross-examination. For example, Plaintiff's counsel was familiar with the limitations expressed by Dr. Bradley. As a result, counsel refined the vocational expert's testimony through cross-examination about the vocational impact of Dr. Bradley's limitations on both jobs (Tr. 68-69).
>
> The circumstances here are distinguishable because there are literally thousands of jobs identified in the DOT.[1] Further, prior to the administrative hearing Plaintiff's counsel had no inkling that the vocational expert would identify the ticket taker (DOT 344.667-010) and monogram machine tender (DOT 583.685-046) jobs in response to the ALJ's second hypothetical question (Tr. 65-67). Obviously, to refine the vocational expert's testimony through cross-examination, Plaintiff's counsel would have needed to conduct research on the DOT and O*NET after the vocational

---

1 According to one source, the DOT defines over 13,000 different types of jobs. https://en.wikipedia.org/wiki/Dictionary_of_Occupational_Titles

7

> expert identified the two jobs. However, it would be unrealistic to expect Plaintiff's counsel to conduct such research during the hearing. Thus, this part of Defendant's waiver argument is without merit because it places an unreasonable burden on Plaintiff's counsel.
>
> . . . .
>
> The Court does not agree with Defendant's contention that the regulations and policy rulings do not contemplate the O*NET as a source of evidence. S*ee* Lee, 63 F. App'x. at 292–93 (federal law "does not preclude reliance on the O*NET"); Moss v. Astrue, No. 09–1196, 2010 WL 2572040, at *7 (C.D. Ill. June 22, 2010) ("[T]he VE is not required to limit his hypothetical to DOT data; the VE can also use outside data, including ONET."). As worded, the regulation makes clear that the Commissioner "will take administrative notice of reliable job information available from various governmental and other publications." 20 C.F.R. § 404.1567(d). The regulation then sets forth a non-exhaustive list of examples that includes the DOT. Id.; *see* Wennersten v. Colvin, No. 12-cv-783-bbc, 2013 WL 4821474, at * (W.D. Wis. Sept. 10, 2013) ("the list is not exclusive"). This interpretation of the regulation is consistent with Social Security Ruling 00-4p which in relevant part reads, "[t]he regulations at 20 CFR 404.1566(d) and 416.966(d) provide that we will take administrative notice of 'reliable job information' available from various publications, including the DOT." 2000 WL 1898704, at *2. As previously mentioned, the United States Department of Labor replaced the DOT with O*NET, a database that is continually updated based on data collection efforts that began in 2001.[2] *See* Cunningham, 360 F. App'x at 616. Thus, the O*NET contains "reliable job information" of which the Commissioner could take administrative notice when determining whether a particular job exists in significant numbers in the regional and national economy.

Id. The Commissioner has presented no argument that would lead the undersigned to upset this Court's prior reasoning, and the undersigned incorporates the above analysis in the present case.

Plaintiff contends that the jobs identified by the vocational expert are obsolete. The relevant jobs are mail sorter (DOT 209.687-026), produce sorter (DOT 529.687.186), and laundry folder (DOT 369.687-018) (Tr. 106-09). It is axiomatic that the ALJ must support their findings with substantial evidence at all stages of the disability evaluation process. *See* 42

---

2 https://www.onetcenter.org/dataCollection.html; and https://www.oalj.dol.gov/LIBDOT.HTM

U.S.C. § 405(g). This includes the determination of whether a significant number of jobs exists in the national economy that the claimant can still perform notwithstanding their limitations. The Sixth Circuit has held, albeit in an unpublished disposition, that an ALJ's failure to consult additional sources when the vocational expert's proffered occupations appear vulnerable to obsolescence may result in a finding that the step five determination is not supported by substantial evidence. Cunningham v. Astrue, 360 F. App'x 606, 615-16 (6th Cir. 2010). Common sense should dictate the determination of whether a particular occupation has become obsolete. Id. at 615. In Cunningham, the Sixth Circuit remanded the case to the Commissioner because the occupations suggested by the vocational expert appeared vulnerable to obsolescence, though the Court did not possess adequate information at the time to determine on its own whether the jobs were in fact obsolete. Id. at 615.

Here, a review of the occupations cited at the administrative hearing does not create an immediate, common sense reaction that the jobs are likely obsolete. In the Johnson case quoted above, for instance, one of the cited occupations was ticket taker. Common sense suggests that - given the proliferation of the internet, smart phones, and electronic recordkeeping - taking tickets is likely a much different job than when the DOT was last updated in 1991. Thus, the undersigned does not find the cited occupations in this case (mail sorter, produce sorter, and laundry folder) present a similarly apparent risk of obsolescence.

However, Plaintiff has pointed out discrepancies between the DOT and O*NET descriptions. The DOT describes a mail sorter as follows:

> Sorts incoming mail for distribution and dispatches outgoing mail: Opens envelopes by hand or machine. Stamps date and time of receipt on incoming mail. Sorts mail according to destination and type, such as returned letters, adjustments, bills, orders, and payments. Readdresses undeliverable mail bearing incomplete or incorrect address. Examines outgoing mail for appearance and

> seals envelopes by hand or machine. Stamps outgoing mail by hand or with postage meter. May fold letters or circulars and insert in envelopes [FOLDING-MACHINE OPERATOR (clerical) 208.685-014]. May distribute and collect mail. May weigh mail to determine that postage is correct. May keep record of registered mail. May address mail, using addressing machine [ADDRESSING-MACHINE OPERATOR (clerical) 208.582-010]. May be designated according to type of mail handled as Mail Clerk, Bills (clerical).

DOT 209.687-026 (1991), *available at* http://www.oalj.dol.gov (follow "DOT" hyperlink; then follow "Clerical and Sales Occupations: 201.162-010 to 219.362-046" hyperlink). The definition trailer that follows the occupational description indicates "STRENGTH: L" which is light work; "SVP:2" which is "[a]nything beyond short demonstration up to and including 1 month" of specific vocational preparation; and "DLU: 87" which means the description was last updated in 1987.[3]

The O*NET Crosswalk function links this occupation to one titled Mail Clerks and Mail Machine Operators, Except Postal Service, 43-9051.00,[4] described as follows:

> Prepare incoming and outgoing mail for distribution. Use hand or mail handling machines to time stamp, open, read, sort, and route incoming mail; and address, seal, stamp, fold, stuff, and affix postage to outgoing mail or packages. Duties may also include keeping necessary records and completed forms.

Id.

The two descriptions appear substantially similar, and the occupation's presence on O*NET provides evidence that mail clerks are far from obsolete. However, Plaintiff noted that there are discrepancies between the DOT and O*Net descriptions that would render the job, as currently performed, beyond Plaintiff's current abilities as described in his residual functional

---

3 https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM

4 https://www.onetonline.org/link/summary/43-9051.00

capacity. One such discrepancy is the specific vocational preparation rating (SVP) for each occupation. The DOT classifies mail clerks at an SVP of 2, while O*NET suggests an SVP of 4. At the administrative hearing, the ALJ's hypothetical questions to the vocational expert contemplated an SVP of 2 (Tr. 108). This discrepancy may be a function of the dated nature of the DOT. It stands to reason that a mail sorter in 1991 would have had far less interaction with technology, particularly as it pertains to the record keeping aspect of the position. The undersigned is not in a position to assess whether Plaintiff's education and experience make it possible for him to perform duties at SVP 2. Therefore, this position will be excluded from those proffered by the vocational expert when determining whether a significant number of jobs exists that Plaintiff can still perform.

The undersigned next addresses the produce sorter position. The DOT describes this position in relevant part as follows:

> Sorts agricultural produce, such as bulbs, fruits, nuts, and vegetables: Segregates produce on conveyor belt or table, working as crewmember, according to grade, color, and size, and places produce in containers or on designated conveyors. Discards cull (inferior or defective) items and foreign matter. Bunches, ties, and trims produce, such as asparagus, carrots, celery, and radishes. Picks out choice produce to be used as cappers (top layers on marketing containers). Packs produce in boxes, barrels, baskets, or crates for storage or shipment [PACKER, AGRICULTURAL PRODUCE (agriculture) 920.687-134].

DOT 529.687.186 (1991), *available at* http://www.oalj.dol.gov (follow "DOT" hyperlink; then follow "Processing Occupations: 529.685-142 to 550.665-022" hyperlink). The definition trailer indicates light work, a GED (General Education Development) of R1 M1 L1, and an SVP of 2. Appendix C to the DOT defines a GED of R1 as the ability to perform simple one- or two-step instructions; M1 as the ability to perform basic math skills; and L1 as the ability to perform basic

reading, writing, and speaking skills.[5]  The trailer indicates the job description was last updated in 1981.

An O*Net Crosswalk search links to 45-2041.00,[6] Graders and Sorters, Agricultural Products, described as follows: "Grade, sort, or classify unprocessed food and other agricultural products by size, weight, color, or condition."  This limited description is supplemented by the tasks section of the O*Net listing, which lists the following associated tasks.

> Place products in containers according to grade and mark grades on containers.
>
> Weigh products or estimate their weight, visually or by feel.
>
> Discard inferior or defective products or foreign matter, and place acceptable products in containers for further processing.
>
> Grade and sort products according to factors such as color, species, length, width, appearance, feel, smell, and quality to ensure correct processing and usage.
>
> Record grade or identification numbers on tags or on shipping, receiving, or sales sheets.

Id.

As before, these two descriptions are relatively consistent at first blush, and nothing suggests the produce sorter occupation has become obsolete.  However, there are discrepancies in the SVP in this instance as well.  The DOT assigns produce sorters an SVP of 2, while O*Net suggests an SVP between 2, but less than 4.  The Commissioner incorrectly asserts that the DOT and O*Net outline the same requirements.  Despite acknowledging that Plaintiff was assigned an SVP of 2 (DN 21 at PageID # 2034), the Commissioner nonetheless argues the O*Net descriptions are consistent with the hypothetical posed by the ALJ.  This simply cannot be so.

---

5 https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM

6 https://www.onetonline.org/link/summary/45-2041.00

The undersigned is not in a position to determine whether the different SVP ratings would impact Plaintiff's ability to perform these jobs. As a result, this occupation will also be excluded when determining whether the ALJ demonstrated at the fifth step that there are a significant number of jobs Plaintiff can still perform despite his limitations.

The next issue is whether the final position, laundry folder, is obsolete or requires skills beyond Plaintiff's residual functional capacity. The DOT defines the position in relevant part as follows:

> Folds fluff-dried or pressed laundry, such as shirts, towels, uniforms, and jackets: Shakes out, smooths, folds, sorts, and stacks wash according to identification tags. Inspects pressed laundry for holes or tears, and separates defective articles for transfer to repair department. Folds laundry, preparatory to wrapping, for delivery to customer. Folds pressed shirts around cardboard forms and inserts assembly in plastic bags. May attach missing buttons to articles, using button-sewing-machine or button-attaching machine. May unload tumbler. May turn socks, match pairs, and tie socks into bundles.

DOT 369.687-018 (1991), available at https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT03B.HTM.

Plaintiff asserts this occupation does not exist on O*Net. Defendant argues a Crosswalk search indicates that this position exists as a subcategory under the more general Helpers-Production Workers, 51-9198.00.[7] This listing does not mention laundry folders (or indeed laundry at all) but is instead a broad category encompassing numerous occupations of varying requirements with no relation to laundry. The undersigned conducted an independent search of O*NET to attempt to determine whether a similar position exists elsewhere in the database. The Court located Laundry and Dry-Cleaning Workers, 51-6011.00.[8] This description reads "[o]perate or tend washing or dry-cleaning machines to wash or dry-clean industrial or household

---

7 https://www.onetonline.org/link/summary/51-9198.00
8 https://www.onetonline.org/link/summary/51-6011.00#JobZone

articles, such as cloth garments, suede, leather, furs, blankets, draperies, linens, rugs, and carpets. Includes spotters and dyers of these articles." Id. Again, O*NET lists this occupation as having an SVP of less than 4, higher than that posed by the ALJ in her hypothetical questions. Because this Court cannot address this discrepancy, this position cannot be included when determining whether a substantial number of jobs exists that Plaintiff can still perform despite his limitations.

Thus, the discrepancies between the DOT and O*NET present sufficient doubt as to the reliability of the vocational expert's testimony to warrant a conclusion that the ALJ's step five determination was not supported by substantial evidence. After all, "[i]f the only jobs that the applicant is physically and mentally capable of doing no longer exist in the American economy (such as pin setter, phrenologist, leech collector, milkman, pony express rider, and daguerreotypist), the applicant is disabled from working, and likewise, as a realistic matter, if there is an insignificant number of such jobs." Herrmann v. Colvin, 772 F.3d 1110, 1113 (7th Cir. 2014). Notably, the Court is not concluding that these positions are obsolete, nor that they do not exist in significant numbers. Rather, this is a recognition that Plaintiff has created sufficient doubt to merit remand so that a vocational expert can determine whether these positions, as performed in the modern economy, are still occupations available to the Plaintiff given his age, experience, education, and residual functional capacity.

Finally, because the undersigned finds remand is appropriate on this issue, the Court will not address Plaintiff's remaining arguments.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **REVERSED.**

**IT IS FURTHER ORDERED** that this matter is **REMANDED**, pursuant to 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

Copies:     Counsel